IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                            Case No. 22-10048-JWB

TOREON JENKINS,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on the government's motion to revoke the magistrate judge's order of release and to detain Defendant pending trial. (Doc. 7.) The motion is fully briefed and is ripe for decision. (Docs. 12, 15.) The court held a hearing on the motion on July 15, 2022, and took the matter under advisement. For the reasons stated herein, the government's motion (Doc. 7) is GRANTED and the magistrate judge's order of release (Doc. 9) is REVOKED.

**I. Factual and Procedural History**

Defendant was arrested on July 7, 2022, based on a criminal complaint charging him with two counts. Count 1 charged that on July 5, 2022, Defendant unlawfully brandished, carried and used a firearm during and in relation to a drug trafficking crime (that is, distribution of a controlled substance and conspiracy to distribute a controlled substance), in violation of 18 U.S.C. § 924(c). (Doc. 1.) Count 2 charged that on the same date Defendant knowingly participated in the use of extortionate means to collect and attempt to collect an extension of credit, in violation of 18 U.S.C. § 894. (*Id.*) An affidavit of a Wichita Police Department Detective alleged that, as reported by a victim, a drug supplier known to the victim as "T" – later allegedly shown by investigators to be

Defendant – "fronted" the victim some counterfeit oxycodone pills to sell. Defendant allegedly drove an Audi A4 with a particular license plate registered to the address of 3420 N. Coolidge in Wichita, which is Defendant's primary residence. The victim reported that on July 5, 2022, the victim was approached by Defendant, who asked for his money. When Defendant was told by the victim that the victim had no money, Defendant allegedly took a pistol out of his waist band, pulled back the slide and released it, and placed the gun back in his waist band. Defendant then allegedly reached into the victim's bag, took out the victim's wallet, and left. In a subsequent vehicle stop by police, Defendant was allegedly driving a vehicle in which the victim's wallet was found, along with a firearm, marijuana, and prescription pills.

Following a detention hearing on July 11, 2022, Magistrate Judge Kenneth G. Gale denied the government's motion for detention, finding a $20,000 unsecured bond with conditions such as home detention and GPS monitoring could assure Defendant's appearance as required and the safety of the community. (Docs. 9, 10.) The government seeks revocation of that order, arguing Defendant is both a flight risk and a danger to the community.[1]

At the hearing on July 15, 2022, the government proffered facts in support of its motion to revoke the magistrate judge's release order. Included in that proffer were additional assertions beyond the July 5 incident. The government asserted that a search warrant executed on the residence in which Defendant lives on Coolidge resulted in officers finding a Glock handgun and a shotgun, both located in Defendant's room, and a Glock gun case that matched the firearm earlier found in Defendant's vehicle when he was arrested, along with hundreds of rounds of ammunition. Officers also found a gold ring with diamonds in it and a Rolex watch that had been purchased for

---

[1] An indictment charging Defendant with the same two offenses listed in the complaint was filed the day after the magistrate judge entered the release order. (Doc. 13.) The parties agreed at the July 15 hearing that the filing of the indictment did not alter or affect the instant appeal.

$30,000 with U.S. currency in Atlanta, Georgia. Officers found receipts for the watch and subsequently located pictures (apparently posted on social media by Defendant) of Defendant purchasing the watch with cash. Officers also found $24,717 in cash in a safe in Defendant's bedroom. Information submitted previously indicates Defendant is unemployed and has had limited past employment. The government proffered that state records indicate Defendant reported wages of $795.75 in 2016, wages of $3,835.32 in 2017, and has not reported any wages after 2017.

Officers also found receipts in Defendant's room indicating he was paying the utilities at a residence on Hardtner street in Wichita, with the accounts listed in his grandmother's name, and a receipt for $1500 for rent on that residence paid by Defendant to his grandmother. The government proffered that police officers conducted surveillance on that residence and observed Defendant frequenting it, although he did not appear to be living there. It further proffered that officers obtained a search warrant and searched the Hardtner residence, where they found suspected counterfeit hydrocodone pills with fentanyl, heroin, methamphetamine, and numerous bottles of codeine cough syrup, including one with Defendant's name on it. Officers also found two firearms in the house and a digital video recorder (DVR) with recordings from cameras around the interior of the house that allegedly showed Defendant handling what appeared to be packages of pills and other drugs, handling firearms, and drinking from the codeine bottles.

The government also proffered that on June 18, 2022, at a gun show in Wichita, Defendant bought four firearms from a vendor and used a false identification card when asked by the vendor to show his identification.

## II. Legal Standard

Pursuant to 18 U.S.C. § 3145(a)(1), the government may seek review of a magistrate judge's order of release. The district court's review of a magistrate judge's order of release is de

novo. *United States v. Cisneros*, 328 F.3d 610, 616 n. 1 (10th Cir. 2003). A de novo evidentiary hearing, however, is not required. The district court may either "start from scratch and take relevant evidence or incorporate the record of the proceedings conducted by the magistrate judge including the exhibits admitted." *United States v. Collier*, No. 12-20021-09, 2012 WL 4463435, at *1 (D. Kan. Sept. 27, 2012) (citing *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991)). The Federal Rules of Evidence do not apply to detention hearings. *See* 18 U.S.C. § 3142(f). The court may allow the parties to present information by proffer or it may insist on direct testimony. *See id*.

Under the Bail Reform Act of 1984, the court must order a defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making this determination, the court must take into account the available information concerning

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence ... or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including-
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Bail Reform Act provides a rebuttable presumption of flight risk and danger to the community when there is probable cause to believe a defendant committed certain types of crimes, including the § 924(c) offense alleged in the complaint and the indictment. *See* 18 U.S.C. § 3142(e)(3)(B). "A grand jury indictment provides the probable cause required by the statute to trigger the presumption." *United States v. Walters*, 89 F. Supp. 2d 1217, 1220 (D. Kan. 2000) (citing *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990)). The charge in this case thus gives rise to a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Defendant as required and the safety of the community.

The burden of production on Defendant to overcome the presumption is not a heavy one, but Defendant must produce some evidence. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991). Even if Defendant overcomes the presumption, the presumption remains a factor in the court's detention decision. *Id*. The burden of proof remains with the government to show that no condition or combination of conditions would reasonably assure the accused's presence in later proceedings and/or the safety of other persons and the community. *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002) (burden of persuasion regarding risk of flight and danger to community always remains with government). The government must prove dangerousness to any other person or the community by clear and convincing evidence. *Id*. at 1252.

**III. Analysis**

**A. Nature and Circumstances of the Offense**

The offense charged in Count 1 triggers the statutory presumption of detention. The use of firearms in connection with the illegal distribution of controlled substances is a particularly volatile combination that raises significant concerns about the safety of the community. The allegations in this instance go beyond merely carrying a firearm to an allegation that Defendant

5

brandished a firearm during and in relation to a drug offense. The serious nature of that allegation is reflected by the fact that a minimum sentence of seven years imprisonment, consecutive to any other sentence of imprisonment, is mandated by statute for § 924(c) offenses where the firearm is brandished. The government's proffer suggests that Defendant brandished a firearm as an implied threat of violence to someone who was engaged in selling controlled substances on Defendant's behalf and who owed him money for that reason, and that Defendant did so to further his collection of money or other valuables relating to the sale of controlled substances. These circumstances strongly suggest that Defendant's release would pose a danger to others and to the community.

### B. Weight of the Evidence

The government's proffer indicates the charges in the indictment depend in part upon testimony of an admitted participant in the distribution of controlled substances, who was the alleged victim of the offenses. But it further indicates there is a significant amount of physical evidence corroborating the victim's allegations, including a recovered firearm allegedly used in the offense, controlled substances, and materials relating to the distribution of controlled substances. That evidence also allegedly includes photographs and/or videos strongly indicating Defendant's participation in drug distribution. On balance, the weight of the evidence is substantial and – at least based on the proffer – gives rise to a strong inference that Defendant's release would pose a danger to the community, and therefore weighs in favor of detention.

### C. History and Characteristics of Defendant

According to the Pretrial Services Report, Defendant is a 21-year old resident of Wichita. He was born here and has lived here his entire life. He graduated high school in 2019. He lives with his mother, a sister, and his grandmother at the residence on Coolidge referred to above. He has lived there for two years. If released, he plans to live at the residence on Coolidge. Defendant

is currently unemployed. He previously did sporadic work for a cousin – "Joe" LNU – and worked part-time as a cashier in 2015 earning minimum wage. He owns a Buick vehicle that was seized at the time of his arrest. The government's proffer further asserts that he also owns an Audi A4 and has paid $5,000 toward the purchase of a Dodge Challenger. Defendant reports no debts.

Defendant has some history of juvenile court matters and two prior arrests as an adult. One of the adult arrests included charges of possession of drugs and drug paraphernalia, and operating a vehicle without a valid driver's license, as to which he obtained a 12-month diversionary disposition from the Park City Municipal Court in September 2021. Defendant has a history of mental health issues dating back to childhood, when he was diagnosed with Bipolar Disorder. He discontinued medication and therapy in high school and, according to a family member, has a tendency to become angry when pushed, although not recently. He admits use of marijuana and the government's proffer indicates Defendant has likely abused other substances as well. As a whole, Defendant's history and characteristics, including his prior criminal history, his history of mental health issues, and his history of substance abuse, indicate his release would pose a danger to the community.

**D. Danger to the Community**

In addition to the foregoing factors indicating that Defendant's release would pose a danger to the community, the information proffered by the government indicates Defendant has a propensity to obtain multiple firearms and that those firearms are related to protecting Defendant's interest in controlled substances. The information relating to Defendant's possession of large amounts of cash indicates Defendant is and has been involved in drug distribution of significant amounts for a significant period of time. His alleged use of a firearm to threaten and rob a person purported to be his representative in drug distribution indicates a high degree of danger to the

community.  Defendant's alleged propensity for keeping firearms in proximity to a large store of cash and other valuables – items that were likely derived from drug distribution – indicates a willingness to use deadly force to protect a lucrative business.  Defendant's use of a fraudulent identification in obtaining multiple firearms at a gun show – although apparently not unlawful – indicates Defendant may engage in deceit to avoid detection or avoid compliance with attempts to monitor his conduct.  Defendant's alleged capacity to maintain a separate residence apparently dedicated to drug distribution further supports an inference of danger to the community, both from the threat posed by significant distribution of dangerous drugs and from the prospect that violence could be used in connection with obtaining or protecting such an operation. Defendant's involvement in controlled substances has apparently included both the residence on Coolidge where he has lived with family members and the residence on Hardtner with which his grandmother has been associated.  Defendant's release could pose a significant risk not only to the safety of the community but to his family members.

The court has considered but rejects the proposition that a combination of conditions would be sufficient to assure the safety of the community if Defendant were released.  A requirement for home detention, for example, appears inadequate despite Defendant's family support when considered in light of information that Defendant has used this residence for purposes connected to drug distribution despite the presence of several family members and has been able to use a separate residence for such purposes despite other family connections to the latter residence.  Defendant's past conduct, including a history of substance abuse, untreated mental health issues, prior criminal conduct, alleged involvement in a significant drug distribution operation, an apparent affinity for firearms, and alleged use of an implied threat of violence to further drug

distribution, all persuade the court by clear and convincing evidence that no combination of conditions would be sufficient to assure the safety of the community.

## IV. Conclusion

The government has carried its burden of proving by clear and convincing evidence that there is no combination of conditions that would reasonably assure the safety of others and the community if Defendant were released pending trial. The magistrate judge's order of release previously entered (Doc. 9) is accordingly REVOKED and the government's motion for detention (Doc. 7) is GRANTED.

Defendant Toreon Jenkins is hereby committed to the custody of the Attorney General, pending trial, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel and, upon an order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Defendant is held shall deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED this 19th day of July, 2022.

                                                                                                       s/ John W. Broomes  
                                                                                                       JOHN W. BROOMES  
                                                                                                       UNITED STATES DISTRICT JUDGE